UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY SCOTT STEVENS,

                Petitioner,                Case No. 3:19-CV-11069

v.

                                       GERSHWIN A. DRAIN
BRYAN MORRISON,                U.S. District Judge

                Respondent.
_____/

**OPINION AND ORDER: (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Randy Scott Stevens, ("Petitioner"), currently confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first- and second-degree criminal sexual conduct in violation of MICH. COMP. LAWS § 750.520b and § 750.520c. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Jackson County Circuit Court. Petitioner was tried jointly with co-defendant James Tingley, but with separate juries. This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant

to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Stevens's convictions arise from sexual acts perpetrated upon his stepdaughter, BH, beginning when she was 9 years old and continuing until she and her siblings were removed from their home by Children's Protective Services on January 25, 2013, when BH was 14 years old, and from his aiding and abetting.[1] Tingley's sexual acts perpetrated upon BH when she was between the ages of 10 and 14. Tingley's convictions arise from the sexual acts perpetrated on BH, as well as sexual acts perpetrated upon Stevens's daughter, JS, when JS was less than 13 years old. [2] BH testified regarding the years of sexual abuse, and JS's preliminary examination testimony was read into the record at trial. [3]
>
> *People v. Stevens*, No. 327160, 2016 WL 7333391, at *1 (Mich. Ct. App. Dec. 15, 2016).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 898 N.W.2d 591 (Mich. 2017).

Petitioner filed a post-conviction motion for relief from judgment with the

trial court, which was denied. *People v. Stevens,* No. 13-3860-FC (Jackson

Cty.Cir.Ct., Jan. 17, 2018).   The Michigan appellate courts denied Petitioner leave

---

[1] The prosecution theory was that Stevens provided Tingley with access to the victims in exchange for rent or money. (footnote original).

[2] Defendants were tried during a joint trial with separate juries. (footnote original).

[3] Because the victim and Petitioner's other children were minors at the time of the offense, the Court will refer to them by their initials only as the Michigan Court of Appeals did to preserve their privacy. See Fed. R. Civ. P. 5.2(a).

to appeal. *People v. Stevens,* No. 342643 (Mich.Ct.App. Aug. 24, 2018), *lv. den.,* 924 N.W. 243 (Mich. 2019).

Petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that Petitioner could return to the state courts to exhaust additional claims. (ECF No. 9.)

Petitioner filed a second motion for relief from judgment and several supplements with the trial court, which was denied. *People v. Stevens,* No. 13-3860-FC (Jackson Cty.Cir.Ct., Feb. 27, 2020). The Michigan Court of Appeals denied Petitioner leave to appeal, pursuant to M.C.R. 6.502(G), the general bar against appealing the denial of a successive motion for relief from judgment. *People v. Stevens*, No. 353833 (Mich. Ct. App. Sept. 29, 2020). The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Stevens,* 955 N.W.2d 254 (Mich. 2021).

This Court granted Petitioner's motion for an extension of the stay in order to allow him to exhaust claims based on newly discovered evidence which he allegedly learned only after the conclusion of his earlier state post-conviction proceedings. The Court also granted Petitioner's motion to amend the petition. *Stevens v. Nagy*, No. 19-11069, 2021 WL 1248294 (E.D. Mich. Apr. 5, 2021).

Petitioner filed a third post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Stevens,* No. 13-3860-FC (Jackson

Cty.Cir.Ct., May 11, 2022). The Michigan Court of Appeals denied Petitioner leave to appeal. *People v. Stevens*, No. 363620 (Mich. Ct. App. Dec. 28, 2022). Petitioner did not appeal to the Michigan Supreme Court.

Petitioner filed a fourth post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Stevens,* No. 13-3860-FC (Jackson Cty.Cir.Ct., Aug. 16, 2023). The Michigan Court of Appeals dismissed Petitioner's appeal for lack of jurisdiction, stating that the application had been filed before the trial court entered its order. *People v. Stevens*, No. 368323 (Mich. Ct. App. Nov. 7, 2023). Petitioner did not file an application for leave to appeal in the Michigan Supreme Court. Petitioner, however, filed an amended application for leave to appeal with the Michigan Court of Appeals, which was denied. *People v. Stevens*, No. 368498 (Mich. Ct. App. Apr. 15, 2024). The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Stevens,* 8 N.W.3d 607 (Mich. 2024).

On January 27, 2025, this Court granted the motions to reopen and to file an amended petition but denied the requests for an evidentiary hearing and for counsel. (ECF No. 28.) In that same order, the Court directed the clerk to serve the original and amended petitions on the warden and the Michigan Attorney General, with a response to the petitions due by July 26, 2025. (*Id.*)

4

The July deadline came and went because the Michigan Attorney General had not received this Court's January 2025 order, as this Court subsequently acknowledged. (ECF No. 35, PageID.4231.)  On September 22, 2025, the Court directed the clerk to re-serve the pleadings and prior order via first-class mail and set a new response deadline of sixty days from the date of the order, putting the new deadline on November 21, 2025. (*Id.*, PageID.4231–32.).

Petitioner in his original and amended petitions seeks habeas relief on 26 grounds. Rather than recite each claim verbatim, the Court will paraphrase the claims for purposes of judicial clarity and economy: (1) the admission of extensive inflammatory evidence of prior other act testimony under M.R.E. 404b and M.C.L. 768.27a violated Petitioner's right to a fair trial, (2) trial counsel was ineffective for failing to object to BH's out of court statements, (3) the prosecutor improperly denigrated a defense witness, (4) Petitioner's rights were violated by the admission of JS's hearsay statements into evidence, (5) Petitioner's due process rights were violated by the admission of improper opinion testimony concerning the credibility of BH, (6) the prosecution's expert witness improperly vouched for BH's credibility, (7) trial counsel was ineffective for failing to object to the testimony of the expert witness, (8) the trial court violated Petitioner's right to confrontation by refusing to allow counsel to question BH about having sexual relations with another man in order to prove another source of injury to the victim, (9) there was insufficient

5

evidence to sustain Petitioner's convictions as an aider and abettor to Mr. Tingley's crimes, (10) the trial court violated Petitioner's confrontation rights by relying solely on hearsay evidence to admit prior bad acts evidence, (11) Petitioner was denied his Sixth and Fourteenth Amendment right to a fair trial, confrontation, and cross-examination when the trial court permitted jailhouse informant Michael Sparks to give untrustworthy and unreliable testimony, (12) the prosecution withheld exculpatory evidence, (13) cumulative error, (14) Petitioner was denied his right of due process by the Jackson County Prosecutor's Office, who redacted/omitted parts of pre-trial and trial testimony, video, and audio evidence from the appellate record, (15) Petitioner was denied his right to cross-examine BH about many inconsistencies from her pre-trial to her trial testimonies, concerning a possible alternative suspect being the person responsible for her physical injury, (16) Petitioner has newly discovered evidence which calls into question BH's credibility and proves his innocence, (17) trial counsel was ineffective for failing to impeach BH's credibility, (18) trial and appellate counsel were ineffective for failing to investigate, failing to request production of highly relevant exculpatory and impeachment records from Petitioner's prior criminal case, failing to locate and interview known witnesses who would have offered exculpatory and impeachment evidence, failing to object to highly prejudicial inadmissible testimony that was outcome determinative where Petitioner's son OT was not listed as a victim or a witness in the prosecution's MRE

6

404(b) or MICH. COMP. LAWS § 768.27(a)'s motion for pretrial defense discovery, and failing to object to clear prosecutor misconduct, (19) the police and prosecutors failed to turn over exculpatory evidence to the defense, (20) Petitioner was denied a fair trial where the prosecutors, investigating officers and a therapist acting on behalf of the prosecution, suppressed and failed to turn over evidence within their control in violation of *Brady v. Maryland*, (21) Petitioner was denied a fair trial by the admission of perjured testimony, (22) the trial judge abused his discretion in the manner in which he denied Petitioner's final post-conviction motion, (23) Petitioner has new scientific evidence which proves his innocence, (24) the trial court on post-conviction review abused its discretion by excluding exculpatory, 3rd party guilt evidence, for example, the affidavit of Karl Peterson and other affidavits, (25) Does MICH. COMP. LAWS § 750.520j prohibit the admission of relevant evidence that shows another source for hymenal injury, semen, DNA, disease, or pregnancy?, and (26) Did the state commit a *Brady* violation when it suppressed exculpatory material evidence that bears directly on the credibility of the sole complainant? [4]

---

[4] Respondent urges this Court to deny 13 of Petitioner's claims, on the ground that they are procedurally defaulted either because Petitioner failed to object at trial or because Petitioner failed to properly exhaust the claim. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S.

362, 405-06 (2000).  An "unreasonable application" occurs when "a state court

---

example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  Petitioner's defaulted claims are intertwined with, and related to, his preserved claims. Some of the defaulted claims are simply repetitions of the same or similar claims that were preserved. Because the same legal analysis applies to both the preserved and unpreserved claims, it would be easier to simply address the merits of the unpreserved claims.

decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. DISCUSSION

### A. Claims # 1, 4, 5, and 6. The evidentiary law claims.

Petitioner in his first, fourth, fifth and sixth claims challenges the admission of certain evidence, which he claims violated Michigan's rules of evidence and his right to due process.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "[S]tate and federal statutes and rules, not the Due Process Clause, ordinarily govern the admissibility of evidence in criminal trials." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (citing *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012))(cleaned up). "Generally, state-court evidentiary rulings cannot rise to

9

the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Further, "[t]o show a due process violation under [the] AEDPA rooted in an evidentiary ruling, this court has typically required a Supreme Court case establishing a due process right with regard to that specific kind of evidence." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

To obtain habeas relief, a habeas petitioner cannot merely "pluck[s] general statements out from the decisions to argue that due process bars 'fundamentally unfair' procedures.'" *Stewart v. Winn,* 967 F.3d at 539. Instead, the Supreme Court must have confronted "the specific question presented by this case," otherwise "the state court's decision could not be 'contrary to' any holding from this Court." *Woods v. Donald*, 575 U.S. 312, 317 (2015)(per curiam) citing *Lopez v. Smith*, 574 U.S. 6 (2014) (per curiam)).  It is not enough that a Petitioner's case is only "similar to" a Supreme Court case.  This Court, in reviewing Petitioner's state court conviction on habeas review, must take care not to frame "the issue at too high a level of generality." *Id.* at 317–18.  A habeas petitioner's "reliance on the general rule that the Due Process Clause prohibits 'fundamentally unfair' procedures—without a specific Supreme Court holding covering the type of due-process error [a habeas

10

petitioner] asserts—would allow courts to 'transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" *Stewart v. Winn*, 967 F.3d at 540 (internal quotation omitted).

Petitioner in his first claim alleges that the trial court violated his right to due process by admitting various types of prior bad acts testimony, including that Petitioner had sent his sons to the home of a known sex offender for money, much like he did with Tingley, and which lead to his conviction for second-degree child abuse; that Petitioner was physically abusive toward his family; that Petitioner had a serious drug problem; and that Petitioner and Tingley sexually assaulted other children in addition to BH. Petitioner argues that this evidence was more prejudicial than probative and was introduced solely to establish that he was a "bad man" with a propensity to commit the charged offenses.

The testimony involving sexual abuse of other minor victims was admitted pursuant to MICH. COMP. LAWS § 768.27a, which provides in relevant part that if "the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."  Under MICH. COMP. LAWS § 768.27a(2)(a), "listed offense" is defined as any offense that comes within the purview of the offenses covered under Section 2 of the Sex

Offenders Registration Act. *See* MICH. COMP. LAWS § 28.722. Michigan Compiled Laws § 768.27a is similar to Federal Rule of Evidence 414(a), which indicates that "[I]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

Petitioner's claim that the state court violated Michigan Rule of Evidence 404(b) or any other provision of state law by admitting evidence of his prior sexual assaults against other minor victims and his history or domestic violence and drug use is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

Moreover, in light of the fact that evidence regarding Petitioner's prior sexual assaults would have been admissible against him in a federal trial under Fed. R. Evid. 414, this Court certainly cannot find that the admission of this evidence at Petitioner's state court trial "was patently unfair, contradicted governing Supreme Court precedent, or resulted in an incorrect and unreasonable application of federal law." *Love v. Carter*, 49 F. App'x 6, 12 (6th Cir. 2002). Indeed, "[t]he sponsors of

the legislative amendment that introduced Rule 414 noted that [the probative value of] such propensity evidence is . . . normally not outweighed by any risk of prejudice or other adverse effects." *United States v. Jones*, 747 F. App'x 348, 357 (6th Cir. 2018) (cleaned up).

In addition, the Michigan Court of Appeals determined that evidence of Petitioner's violence toward his family was relevant and admissible for the limited purpose of explaining BH's compliance with his demands, including her delay in reporting the long-term sexual abuse. *People v. Stevens*, 2016 WL 7333391, at * 2. Petitioner's claim that this evidence should have been excluded under Michigan Rule of Evidence 403 for being more prejudicial than probative does not entitle Petitioner to habeas relief.  The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012)(emphasis original).

Finally, to the extent that Petitioner argues that evidence of his drug problem was irrelevant, Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009);

*see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978). Petitioner is not entitled to habeas relief on his first claim.

Petitioner in his fourth claim alleges that the trial court erred in admitting JS's hearsay statements to a detective regarding her fear of coming back to her hometown to testify and her fear that Petitioner was going to kill her. The Michigan Court of Appeals ruled that these statements were admissible under the state of mind exception to the hearsay rule found in Mich. R. Evid. 803(3). *People v. Stevens*, 2016 WL 7333391, at * 5.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable on federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights).  The admission of this evidence in violation of Michigan's rules of evidence does not entitle petitioner to relief.

The Federal Rules of Evidence, like the Michigan Rules of Evidence, except certain statements from the prohibition against hearsay, including statements describing a then-existing mental, emotional, or physical condition. Fed. R. Evid.

14

803(3); Mich. R. Evid. 803(3). A statement of fear "may be admissible under Rule 803(3)." *United States v. Kilpatrick*, 798 F.3d 365, 386 (6th Cir. 2015). As the Michigan Court of Appeals concluded, JS's statement to Detective Merritt "w[as] [a] statement of her then-existing state of mind." *Stevens*, 2016 WL 7333391, at *5. This Court cannot revisit the state court's determination concerning the admission of JS's statements. Petitioner is not entitled to habeas relief on his fourth claim.

Petitioner alleges in his fifth and sixth claims that the state trial judge should not have allowed Dr. Markman to testify that she did not believe BH was lying about being sexually abused by Petitioner.

The Michigan Court of Appeals rejected these claims:

> The challenged testimony was elicited during Tingley's counsel's cross-examination of Dr. Markman. Thus, Stevens's reliance on authority holding that "it is misconduct for a prosecutor to elicit opinion testimony from one witness that another witness has lied," see *People v. Buckey*, 424 Mich. 1, 17; 378 NW2d 432 (1985), is misplaced. Similarly, Stevens's argument that "[t]his testimony was an improper attempt to have an authoritative witness bolster the prosecution's case by giving on opinion on [BH's] veracity for truthfulness" is misplaced as the prosecutor did not elicit the testimony. Nonetheless, the Supreme Court has held that even when an expert in CSC cases offers improper opinion testimony during the prosecution's case that a sexual assault in fact occurred, "generally effective cross-examination will prevent the jury from drawing such a conclusion; however a limiting instruction may also be necessary and should be given on request."

> *People v. Stevens*, 2016 WL 7333391, at *6.

In light of the deferential standard afforded to state courts under the AEDPA, the Michigan Court of Appeals' rejection of Petitioner's claim that Dr. Markman

offered improper opinion testimony was not an unreasonable application of clearly established law, particularly when it was the co-defendant's counsel and not the prosecutor who elicited this testimony during his cross-examination of Dr. Markman.  Petitioner is thus not entitled to habeas relief on his fifth and sixth claims. *See e.g. Schoenberger v. Russell*, 290 F. 3d 831, 835 (6th Cir. 2002) (application by state Court of Appeals of plain error standard in its determination to admit testimony of social workers and juvenile probation counselor regarding their beliefs as to whether minor abuse victims truthfully reported defendant's sexual abuse was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on unreasonable determination of the facts, warranting denial of habeas relief; defense counsel elicited such testimony during cross-examination, and similar testimony on direct was warranted after defense opened the door to victims' credibility).  Petitioner is not entitled to habeas relief on his first, fourth, fifth, or sixth claims.

### B. Claims # 2, 7, 17, and 18. The ineffective assistance of counsel claims.

Petitioner in his second, seventh, seventeenth, and eighteenth claims alleges he was denied the effective assistance of trial and appellate counsel.

A defendant must satisfy a two-prong test to establish the denial of the effective assistance of counsel.  First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was

not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

Petitioner in his second claim argues that his trial counsel should have objected to hearsay testimony from Dr. Markman regarding BH's statements to her that she had been sexually abused. The Michigan Court of Appeals rejected this claim, finding that BH's statements to Dr. Markman, a licensed physician who is board certified in pediatrics and associate director of the child protection team at the University of Michigan, were admissible under MICH. COMP. LAWS § 803(4), the medical treatment exception to Michigan's hearsay rule. *Stevens*, 2016 WL 7333391, at *3–4.

17

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals determined that BH's statements to Dr. Markman during the course of her examination were admissible under the medical treatment exception to Michigan's hearsay rule, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008).  Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject Petitioner's second ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005). Because BH's statements to Dr. Markman concerning her sexual abuse at the hands of Petitioner were admissible pursuant to the medical treatment exception to the hearsay rule, counsel was not ineffective for failing to object to their admission. *Brandt v. Curtis*, 138 F. App'x 734, 739-41 (6th Cir. 2005). Petitioner is not entitled to relief on his second claim.

Petitioner's seventh claim argues trial counsel should have objected to Dr. Markman's testimony that she did not believe that BH is lying. Petitioner is not entitled to relief on this claim for several reasons.

First, counsel may have chosen not to object to Dr. Markman's testimony so as not to highlight it to the jury, and avoid bringing undue attention to the evidence. *See Cobb v. Perini,* 832 F.2d 342, 347-48 (6th Cir. 1987).  "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint[,]."*United States v. Caver,* 470 F.3d 220, 244 (6th Cir. 2006). Stated differently, Petitioner is unable to show that counsel's failure to object to this evidence-thus drawing attention to it—was deficient, so as to support an ineffective assistance of counsel claim. *See Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010).

Secondly, in light of the additional evidence against Petitioner, he is unable to show that he was prejudiced by defense counsel's failure to object to Dr. Markman's testimony that she did not believe BH was lying. *See Schoenberger v. Russell*, 290 F.3d at 836-37 (habeas petitioner not denied the effective assistance of counsel where he could not show that he was prejudiced by defense counsel's failure to object to social workers' and juvenile probation counselor's testimony concerning their opinions as to the truthfulness of minor victims' reports of sexual abuse by defendant).  This is particularly so in light of the fact that Dr. Markman only made a brief reference in a single answer to her impressions about BH's credibility. *See Gresser v. Franke*, 628 F. App'x 960, 963 (9th Cir. 2015). Petitioner is not entitled to relief on his seventh claim.

Petitioner in his seventeenth claim alleges that trial counsel was ineffective for failing to cross-examine BH about her having sex with Karl Peterson, in order to show that the injury to her hymen was caused by her sexual activity with Peterson, and not with Petitioner.

The problem with this claim is that counsel did attempt to question BH about her sexual activity with Peterson, but the judge precluded counsel from asking BH questions about any prior sexual activity pursuant to Michigan's Rape Shield Act after BH clarified that she did not testify at the preliminary examination that she had any sexual relationship with Peterson and Petitioner presented no other evidence that BH had been sexually active with Peterson.

Because the proposed evidence of a sexual relationship between BH and Peterson was deemed by the Michigan Court of Appeals to be barred by Michigan's rape shield law, Petitioner fails to show that trial counsel was ineffective in failing to present this evidence. *See Dufresne v. Palmer*, 876 F.3d 248, 258 (6th Cir. 2017) (Appellate counsel's failure to argue that trial counsel should have interviewed and presented additional witnesses at trial for criminal sexual conduct was not deficient performance, and thus did not constitute ineffective assistance of counsel, where testimony by potential witness included on defense's witness list would have been inadmissible under Michigan's rape-shield statute). Petitioner is not entitled to relief on his seventeenth claim.

20

Petitioner in his eighteenth claim alleges that trial and appellate counsel were ineffective in various ways for failing to challenge the admissibility of the various other acts evidence that had been admitted at trial. The Michigan Court of Appeals, however, had concluded that all of this evidence was relevant and admissible under Michigan law for various reasons. *People v. Stevens*, 2016 WL 7333391, at * 3.

Because the Michigan Court of Appeals determined that such "other acts" evidence was admissible, trial counsel was not ineffective for failing to object to its admission. *See Pearl v. Cason,* 219 F. Supp. 2d 820, 828-29 (E.D. Mich. 2002). Moreover, appellate counsel did challenge the admission of this other acts evidence in her brief on appeal before the Michigan Court of Appeals. (ECF No. 38-47, PageID. 6310-16). Petitioner also raised separate challenges to the admissibility of the other acts evidence in his own supplemental pro per Standard 4 appellate brief that was filed along with appellate counsel's brief. (ECF No. 38-47, PageID. 6240-51). [5] Because the Michigan Court of Appeals considered, and rejected the claims raised by Petitioner in the supplemental *pro per* brief, Petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief. *See Donaldson v. Booker,* 505 F. App'x 488, 496 (6th Cir. 2012).

---

[5] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

21

Although unclear, it appears that Petitioner may also be arguing that trial counsel was ineffective for failing to object to the prosecutorial misconduct he complains of in Claims # 3, 11, 14, and 21, *infra*. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). As will be discussed below, the prosecutor's actions did not deprive Petitioner of a fundamentally fair trial; he cannot show that he was prejudiced by counsel's failure to object. *Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

Finally, to the extent that Petitioner appears to allege through his various pleadings that appellate counsel was ineffective for failing to raise certain issues on his appeal of right, none of the claims he raises in his lengthy original and amended petitions have any merit at all.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of Petitioner's claims have any merit, Petitioner fails to show that appellate counsel was ineffective.  Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### C. Claims # 3, 11, 14, and 21. The prosecutorial misconduct claims.

Petitioner next contends that he was denied a fair trial because of prosecutorial misconduct.  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.

To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct

claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner in his third claim alleges that the prosecutor committed misconduct by denigrating a defense witness for the co-defendant by laughing at her. The Michigan Court of Appeals rejected this claim:

> Here, one of Tingely's (sic) stepdaughters, DA, testified that Tingley had sexually abused her as a child. When SA, another of Tingley's stepdaughters, subsequently testified that DA had "false memory syndrome" and "liked to make up stories," Tingley's attorney commented to the prosecutor, "Would you like to laugh a little louder," to which the prosecutor replied, "I'm sorry, I didn't realize I was under oath."
>
> In *People v. Clark*, 68 Mich. App 48, 51–52; 241 NW2d 756 (1976), the prosecutor laughed "during the course of" a defense witness's testimony. In contrast, in the present case, the prosecutor allegedly laughed only in response to SA's testimony regarding false memory syndrome. As in *Clark*, Tingley's counsel made a reference regarding the laughter on the record. And, as in *Clark*, "neither [Tingley's counsel nor Stevens's counsel] voiced an objection nor asked for a mistrial," *id*. at 52, nor did they request any other action by the trial court. In *Clark*, this Court held that under such circumstances, "[c]ounsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." *Id*. Moreover, the trial court in this case instructed the jurors that they were the sole judges of the witnesses' credibility and that the lawyers' comments were not evidence. The court's instructions were sufficient to dispel any perceived prejudice. *People v. Long*, 246 Mich.App 582, 588; 633 NW2d 843 (2001). Juries are presumed to follow their instructions. *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998). Stevens has not demonstrated plain error affecting his substantial rights
>
> *People v. Stevens*, 2016 WL 7333391, at *4.

In this case, the prosecutor's comments were not so incendiary as to inflame the jury's passion or distract them from determining Petitioner's guilt or innocence. *See Davis v. Burt,* 100 F. App'x 340, 348 (6th Cir. 2004); *see also Rohit v. Conway*, No. 03CV01817(SLT)(VVP), 2007 WL 1540268, at *11 (E.D.N.Y. May 24, 2007) (habeas petitioner not entitled to relief on claim that the prosecutor committed misconduct by laughing while defense counsel cross-examined a witness); *see also United States v. Muja*, 102 F. App'x 212, 216 (2d Cir. 2004) (the single inappropriate action–the prosecutor's laugh during defense counsel's summation–did not warrant reversal of federal conviction).  When combined with the instruction from the trial judge that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's isolated laughter did not render the entire trial fundamentally unfair. *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000).

Petitioner in his eleventh and twenty first claims alleges the prosecutor presented perjured testimony.  As part of his eleventh claim, Petitioner contends that the prosecutor presented perjured testimony from Michael Sparks, who was an inmate at the county jail. Sparks testified that the co-defendant told him about the arrangement he had to pay Petitioner for access to Petitioner's children for sexual purposes.

The Michigan Court of Appeals rejected this claim:

Stevens has not shown that the witness testified falsely. The record shows only that the witness pleaded guilty in another case after offering

to supply information regarding statements made by Tingley in the present case. Stevens has not presented any evidence to show that the witness's testimony that he did not receive a plea bargain in exchange for his testimony in this case was false. Stevens has failed to demonstrate plain error affecting his substantial rights.

*Stevens*, 2016 WL 7333391, at * 8.

In his twenty first claim, Petitioner alleges that the prosecutor introduced "highly inflammatory" and "false" testimony from Detective Merritt and Kim Craighead, a therapist, that JS was scared to testify because she feared Petitioner would kill her. Stevens claims that a later-executed affidavit from JS showed that testimony to be false.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to

establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d at 517-18.

Petitioner is not entitled to relief on either of his claims because he failed to show that Mr. Sparks, Detective Merrill, or Ms. Craighead committed perjury at his trial. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Petitioner has presented absolutely no evidence that Sparks testified falsely at his trial. With respect to JS, Petitioner points to an affidavit executed by JS years after the trial in which she claims that she was not afraid of Petitioner, but the detective and the therapist told her to say so. However, JS testified at the preliminary examination and at trial testified that she was afraid. ECF No. 38-4, PageID. 4385), 2/27/15 Trial Tr. at 213 (ECF No. 38-15, PageID.5547 (noting that a recording of JS's prior testimony was played for the jury).

Moreover, as will be addressed more thoroughly when discussing Petitioner's actual innocence claim, below, recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). Skepticism about recantations is especially applicable in cases of child sexual abuse, where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story. *United States v. Miner*, 131 F.3d 1271, 1273-

27

1274 (8th Cir. 1997) (quoting *United States v. Provost*, 969 F. 2d 617, 621 (8th Cir. 1992)).  Petitioner failed to show that any witness committed perjury in this case.

Petitioner in his fourteenth claim alleges that the prosecutor committed misconduct by delaying the transcription of the testimony of his son OT. Petitioner claims that this was a deliberate plan by the prosecutor to deny him due process on appeal.

Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). Petitioner failed to offer any evidence that the prosecutor deliberately tampered with the transcripts or attempted to prevent OT's testimony from being transcribed. This is particularly so, in that the Michigan Court of Appeals concluded that: "The delayed transcription appears to have been the result of a technical glitch in downloading the video files to the digital court player website from which the court reporter can access the video files to prepare the transcripts." *People v. Stevens*, 2016 WL 7333391, at *9, n. 9.

In any event, Petitioner's appellate counsel received the transcript of the missing testimony four months before the appellate brief was due in the Michigan Court of Appeals. *Id.*, at * 9.  The Sixth Circuit has stated that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *See Scott v. Elo*, 302 F. 3d 598, 604 (6th Cir. 2002)(citing *Bransford v.*

*Brown*, 806 F.2d 83, 86 (6th Cir. 1986)). Because this transcript was provided four months prior to the appellate brief deadline, Petitioner was not prejudiced by any delay in the transcription. Petitioner is not entitled to relief on his fourteenth claim.

### D. Claims # 8, 10, 11, 15, and 25. The Confrontation Clause claims.

Plaintiff next contends in a series of claims that his Sixth Amendment right to confrontation was violated in various ways. Specifically, Petitioner in his eighth, fifteenth, and twenty fifth claims alleges that the trial judge violated his right to confrontation by refusing to allow defense counsel to question BH about whether she had a sexual relationship with a man named Karl Peterson. Petitioner argues that this evidence was admissible to establish another source of injury to BH's hymen other than Petitioner and was thus admissible under Michigan's Rape Shield Act.

In Michigan, evidence of a victim's sexual contact with other men besides the defendant—in the form of specific instances of conduct, opinion, or reputation—is generally inadmissible under the Rape-Shield Act, MICH. COMP. LAWS § 750.520j; *People v. Gaines*, 306 Mich. App. 289, 317, 856 N.W.2d 222, 242 (Mich. Ct. App. 2014). Only two types of evidence are admissible under the Rape-Shield Act, assuming the evidence is "material to a fact at issue in the case" and its "inflammatory or prejudicial nature does not outweigh its probative value": (1) evidence of the victim's past sexual conduct with the actor, and (2) evidence of

29

specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. MICH. COMP. LAWS § 750.520j(1)(a) & (b).

> The Michigan Court of Appeals rejected Petitioner's claim:
>
> Stevens first argues that the trial court abused its discretion by refusing to allow Stevens to cross-examine BH about her sexual relations with another person, as an exception to the rape shield law, to offer an alternative explanation for the medical testimony regarding the injuries to BH's hymen. He contends that the trial court's ruling denied him the opportunity to cross-examine BH about her recanted preliminary exam testimony and to present a defense. We review a trial court's evidentiary decision for an abuse of discretion.
>
> Stevens's argument at trial and on appeal is based upon his interpretation of BH's testimony at the preliminary examination. However, due to the ambiguous nature of the question posed and BH's response, the trial court clarified BH's preliminary examination testimony on the record before ruling on Stevens's counsel's request. BH stated that she had never had sex with the other person. Contrary to Stevens's assertion, BH's statement was not a recantation of her preliminary exam testimony but, rather, a clarification of her preliminary exam testimony. Because BH denied having sexual intercourse with the other person, and Stevens presented no evidence that BH had sexual intercourse with the other person, the trial court did not abuse its discretion by refusing to allow Stevens to cross-examine BH about her sexual activity with the other person.

*People v. Stevens*, 2016 WL 7333391, at *6.

The Sixth Amendment Confrontation Clause guarantees the accused the right to cross examine adverse witnesses to uncover possible biases and expose the witness' motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). The Confrontation Clause guarantees only an opportunity for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish. *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal citations omitted).  The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Moreover, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

The trial court in this case excluded such testimony because it concluded that it was not relevant under Michigan's rape shield statute.  The legitimate interests served by the notice requirement of a rape shield statute can, in some circumstances, justify precluding evidence of a prior sexual relationship between a rape victim and a defendant without running afoul of the Sixth Amendment.  *Michigan v. Lucas*, 500 U.S. 145, 151-153 (1991).  The legitimate state interests behind a rape shield statute include giving a rape victim a heightened protection against surprise, harassment,

and unnecessary invasions of privacy and may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Id.*  The rape shield laws were designed to protect the victims of sexual assault and to encourage the reporting of what has traditionally been an unreported crime. *Carrigan v. Arvonio*, 871 F. Supp. 222, 224 (D.N.J. 1994).

The Michigan Court of Appeals reasonably concluded that the trial judge properly prohibited defense counsel from questioning BH about having sexual relations with Karl Peterson because Petitioner presented no evidence at the time of trial that this individual had sexual intercourse with BH. *Dixon v. White*, 366 F. Supp. 2d 528, 538 (E.D. Mich. 2005), *rev'd on other grds.* 210 F. App'x 498 (6th Cir. 2007).  Although Petitioner now has an affidavit from Karl Peterson, dated July 14, 2017, in which he purportedly admits to having sex with BH (ECF 2-5, PageID. 2000-01), as well as an affidavit from Amanda Walsh/Avery dated January 24, 2018, in which she claims that Peterson admitted to having sex with a 13-year-old girl, (*Id.*, PageID. 2014-16), none of this evidence was presented to the judge at the time he made his decision to exclude the evidence at Petitioner's trial on February 24, 2015.

Moreover, even if Petitioner could have presented evidence that Peterson sexually penetrated BH, this evidence would not have exculpated Petitioner of

sexually assaulting BH. *Dixon v. White*, 366 F. Supp. 2d at 538. Lastly, Petitioner was not precluded by the judge from eliciting testimony that the hymenal damage to BH could have been caused by noncriminal means. *Id.* Petitioner is not entitled to relief on these claims.

Petitioner in his tenth claim alleges that his right to confrontation was violated when the judge used hearsay evidence to determine the admissibility of the other acts evidence. The Confrontation Clause does not apply to preliminary questions of admissibility. *United States v. Matlock*, 415 U.S. 164, 174–75 (1974) (noting the Confrontation Clause is not implicated when the Court makes a preliminary authentication ruling pursuant to Rule 104). And the Supreme Court's decision in *Crawford v. Washington, infra,* did not change that dynamic. *See, e.g., United States v. Bedoy*, 827 F.3d 495, 511 (5th Cir. 2016) ("*Crawford's* strictures do not govern the preliminary determination of the admissibility of evidence under Federal Rule of Evidence 104(a)."). Petitioner is not entitled to relief on his tenth claim.

As part of his eleventh claim, Petitioner argues that the admission of co-defendant Tingley's admissions to fellow inmate Michael Sparks violated his right to confrontation.

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only

33

against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-128 (1968). The Confrontation Clause, however, is not implicated, and need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *see also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford v. Washington,* 541 U.S. 36, 51-52, 56 (2004). "[B]ecause it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *U.S. v. Johnson*, 581 F. 3d 320, 326 (6th Cir. 2009). Mr. Tingley's jailhouse confession to a fellow inmate was not testimonial and thus its admission did not violate Petitioner's right to confrontation. *Fields v. Birkett*, 461 F. App'x 454, 457-58 (6th Cir. 2012). Petitioner is not entitled to relief on his eleventh claim.

### E. Claim # 9. The insufficient evidence claim.

Petitioner next contends that the trial court erred in refusing to direct a verdict of acquittal because the prosecutor presented insufficient evidence to establish that he aided and abetted his co-defendant in the commission of several of the charges.[6]

---

[6] Petitioner's claim involving the trial court's failure to direct a verdict of acquittal is construed as an attack on the sufficiency of the evidence. *See United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002).

The Michigan Court of Appeals rejected this claim:

> Stevens does not dispute that Tingley committed the offenses of first- and second-degree CSC against BH. BH testified that Stevens sent her to Tingley's house and that Tingley sexually molested her while she was there. She also testified that Stevens told Tingley that he would have to pay money if he wanted her there, and that she once delivered $300 from Tingley to Stevens. Evidence was also presented that Stevens had a drug problem and that he had prostituted his wife in the past to get funds to purchase drugs. Viewed in the light most favorable to the prosecution, this evidence was sufficient to allow a rational trier of fact to find that Stevens performed acts that assisted Tingley's CSC crimes and that he intended the commission of the crimes or knew that Tingley intended the commission of the crimes at the time that he gave aid or encouragement and, therefore, that Stevens was guilty beyond a reasonable doubt of aiding and abetting first and second degree criminal sexual conduct. Stevens's argument that he presented alternative explanations for the payment of money from Tingley to Stevens is not persuasive because the prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility." *People v. Nowak*, 462 Mich. 392, 400; 614 NW2d 78 (2000). Rather, the prosecution is only required to convince the jury, in the face of whatever contradictory evidence the defendant may provide, that the elements of the crime have been proven beyond a reasonable doubt. *Id.*

*People v. Stevens*, 2016 WL 7333391, at *7 (internal footnote omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the requisite elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court gives circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954) (circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more");

*Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

      3. the defendant intended the commission of the crime or had
      knowledge that the principal intended its commission at the time he
      gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines,*

460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

     In order to be guilty of aiding and abetting under Michigan law, the accused

must take some conscious action designed to make the criminal venture succeed.

*See Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981).  Aiding and abetting

describes all forms of assistance rendered to the perpetrator of the crime and

comprehends all words or deeds which might support, encourage, or incite the

commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W.

2d 728 (1995).  The quantum or amount of aid, advice, encouragement, or counsel

rendered, or the time of rendering, is not material if it had the effect of inducing the

commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W.

2d 810 (1992).  Finally, the Michigan Supreme Court has held that there is no

language in Michigan's aiding and abetting statute that shows an intent by the

Michigan Legislature "to abrogate the common-law theory that a defendant can be

held criminally liable as an accomplice if: (1) the defendant intends or is aware that

the principal is going to commit a specific criminal act; or (2) the criminal act

committed by the principal is an 'incidental consequence[ ] which might reasonably

be expected to result from the intended wrong.'" *People v. Robinson,* 475 Mich. 1,

9; 715 N.W. 2d 44 (2006) (quoting Perkins, Criminal Law (3d ed.), pp. 741-43, 745).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Thomas v. Stephenson*, 898 F.3d 693, 699 (6th Cir. 2018) (quoting *Carines,* 460 Mich. at 758).

The evidence in this case, when viewed in a light most favorable to the prosecution, permitted a rational trier of fact to conclude that Petitioner sent BH to his co-defendant's house with the intent that his co-defendant would have sex with her in exchange for the co-defendant paying money to Petitioner. The fact that Petitioner provided his co-defendant with access to BH so that he could have sex with the victim is circumstantial evidence that supports Petitioner's convictions

under an aiding and abetting theory. *See Waters v. Kassulke,* 916 F.2d 329, 334 (6th Cir. 1990) (circumstantial evidence established mother's intent to promote or facilitate her boyfriend's rapes of her minor daughters, thus supporting conviction for complicity in rapes, notwithstanding mother's contention that, at worst, she merely failed to prevent rapes, and that she was not even present when each rape was committed; daughters' testimonies established that mother, both by her statements and her conduct, provided boyfriend with access to whichever daughter he desired to have sexual relations with and disregarded daughters' complaints).

To the extent that Petitioner attacks BH's credibility, he is not entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of the evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* To the extent that Petitioner's insufficiency of evidence claim rests on an allegation of the victim's credibility, which is the province of the jury, he is not entitled to habeas relief on this claim. *See Tyler v. Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005). Petitioner is not entitled to habeas relief on his ninth claim.

**F.  Claims # 12, 19, 20, and 26. The *Brady* claims.**

Petitioner next contends that the prosecutor violated his right to due process by withholding various forms of exculpatory evidence.  It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988) (citing *Weatherford*).  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F.3d 416, 441 (6th Cir. 2002).   Petitioner would not be entitled to habeas relief simply because the prosecutor violated M.C.R. 6.201 or some other Michigan civil procedural rule regarding discovery.

It is true that suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S.

41

263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).

Petitioner in his twelfth claim makes a generalized claim that the prosecutor withheld exculpatory evidence. In this claim Petitioner fails to identify what exculpatory or impeachment evidence was allegedly suppressed. Petitioner only complains of not receiving various documents, regardless of whether they were exculpatory or inculpatory.

A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).   Petitioner fails to show that any of these

documents allegedly withheld exculpated him of this crime.  Petitioner is therefore not entitled to habeas relief on this *Brady* claim.  *Burns,* 328 F. Supp. 2d at 724.

In his nineteenth claim, Petitioner contends that the prosecution suppressed exculpatory statements from his sons NS and OT.  In support of his claim, he points to two affidavits that NS and OT executed after the trial in this case.  NS executed his affidavit on April 4, 2017 (ECF No. 2-4, PageID. 1880-81) and OT executed his on April 27, 2017 (*Id.*, PageID. 1966-69), over two years after the trial in this case, which concluded in March of 2015. NS's affidavit relates to Petitioner's prior second-degree child abuse conviction.  NS denies in his affidavit that Geoffrey Friant ever molested him when Petitioner sent him to his house. Interestingly, Petitioner's other son, OT, indicated both in his affidavit and at trial that Friant sexually molested him after Petitioner sent him to live with Friant. OT, however, also claims in his affidavit that BH recanted her allegations against Petitioner to him.

Petitioner does not allege that the prosecutor had statements to this effect from NS or OT at the time of his trial. The holding in *Brady* does not apply to information that is not wholly within the control of the prosecution. *See Owens v. Guida*, 549 F.3d 399 (6th Cir. 2008).  In addition, "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). The prosecution could not have suppressed evidence that did not exist at the time of trial.

*See United States v. Santo*s, 486 F. App'x 133, 135, n.1  (2d Cir. 2012) (noting that a prosecutor's obligations under *Brady* "do not cover" post-conviction statements). Moreover, to the extent that Petitioner alleges that OT did not previously disclose that Friant had sexually abused him, OT admitted as much at trial that this was the first time that he disclosed being sexually abused.  If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Benc*s, 28 F.3d 555, 560-61 (6th Cir. 1994).  Because Petitioner was able to bring this information to the jury's attention, Petitioner is not entitled to habeas relief on his nineteenth claim.

In his twentieth claim, Petitioner alleges that the prosecution suppressed a post-conviction statement from JS that contradicted her testimony at the preliminary examination and that of Detective Merritt and Kim Craighead, who both testified consistently with JS's preliminary examination testimony that she was afraid of Petitioner.  JS signed two affidavits, one on April 13, 2018 (ECF No. 2-5, PageID.2020-22) and one on June 10, 2021 (ECF No. 23, PageID.2580-83). As mentioned above, JS's April 13, 2018 and June 10, 2021 affidavits could not have been suppressed during Petitioner's 2015 trial. *See Santos*, 486 F. App'x at 135, n.1. Moreover, as discussed above, skepticism about JS's post-trial recantations is warranted, where recantation in child sexual abuse cases is typical, such as where

44

family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story. *United States v. Miner*, 131 F. 3d at 1273-1274.  As will be discussed in greater detail in addressing Petitioner's actual innocence claims, *infra,* there is significant evidence that Petitioner and other persons acting on his behalf tried to coerce witnesses into changing their stories both at trial and afterwards. Petitioner is not entitled to habeas relief on his twentieth claim.

In his twenty-sixth claim, Petitioner alleges that the prosecution suppressed BH's medical records showing that she was diagnosed with a brain tumor after the trial in this case. As with claims 19 and 20, the prosecution could not have suppressed something that did not exist at the time of trial. *See Santos*, 486 F. App'x at 135, n 1.  Petitioner can also not show that evidence that BH may have had a brain tumor at the time of his trial was exculpatory. Petitioner's own medical expert, Dr. Joseph Felo, who was retained to interpret the tumor evidence, found that BH's symptoms may have been "difficult to tolerate and may make her upset and irritable, but it would not have caused changes in mental health like mood swings or erratic behavior." ECF No. 23, PageID.2574. Further, BH did not start taking the strong medication she was prescribed upon her diagnosis until one year after the trial in this case and it therefore could not possibly have affected her testimony or credibility. Dr. Felo found that BH's "testimony can't be blamed on the adverse effects of drug

treatment." Dr. Felo also indicated that Petitioner exaggerated the size of the tumor: "The tumor was 1.6 cm (5/8 of an inch) when first documented on 5/21/2014 and clearly not 'the size of a baseball.'" (*Id*.). Petitioner has failed to show that this evidence was exculpatory. Petitioner is not entitled to habeas relief on his twenty sixth claim.

### G. Claim # 13. The cumulative errors claim.

Petitioner next argues he is entitled to habeas relief because of cumulative error. The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005). Petitioner is not entitled to habeas relief based on cumulative error. *Id.*

### H. Claims # 16 and 23. The actual innocence claims.

Petitioner next contends that he has newly discovered evidence that establishes his actual innocence. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,*

569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").  Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).  Petitioner would therefore not be entitled to relief for a freestanding actual innocence claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007).

In any event, Petitioner's allegedly new evidence would not exonerate Petitioner of the offenses he was convicted of, but at most, could only be used to impeach the credibility of BH or JS or perhaps Detective Merrill and Ms. Craighead. Impeachment evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).

More importantly, much of this evidence involves affidavits by Petitioner's wife, several of his children, and several friends or acquaintances and were signed between 2016 and 2021, well after Petitioner's trial.  Many of the affidavits claim that BH recanted her trial testimony to them. Significantly, Petitioner does not have

an affidavit from BH recanting her trial testimony. Hearsay is "presumptively unreliable," especially in the post-conviction context. *Bell v. Howes*, 701 F. App'x 408, 412 (6th Cir. 2017); *see also Davis v. Bradshaw*, 900 F.3d 315, 327 (6th Cir. 2018) (noting that because the new-evidence statements were hearsay, they were "presumptively less reliable than direct testimony." (cleaned up)). As mentioned, recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d at 1264. Skepticism about recantations is especially called for in cases like this involving child sexual abuse, where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story. *United States v. Miner*, 131 F. 3d at 1273-1274.

This, in fact, appears to have happened in this case, where Petitioner's sisters tried to intimidate Petitioner's wife Bobbi Jo Stevens not to testify. ECF No. 38-14, PageID.5235-5236. At sentencing, it was revealed that a letter from Petitioner from the prison in Coldwater had been intercepted, in which it appears that he appeared to intimidate witnesses before a pretrial date. Petitioner in his pre-sentence report admitted to sending this letter to his brother-in-law under the guise that his brother-in-law was a lawyer. In another letter to his sister, Petitioner tells his sister Patty to thank a woman identified only as Jasmine for telling Petitioner's wife not to talk with the prosecutor. At the end of the letter, he instructed his sister to rip it up. ECF

No. 38-18, PageID.5760. Although Jasmine is not further identified, Petitioner has an affidavit from a Jessamyn Delong, dated July 18, 2016, in which she claimed that BH recanted her testimony to her. ECF No. 2-4, PageID.1942-44.  It is unclear if this is the same individual referred to in Petitioner's letter.

In any event, most of these affidavits were signed between 2016 and 2021, including where the affiants claim BH recanted her testimony and/or that Karl Peterson admitted to being the assailant. The fact that none of these witnesses came forward in a timely manner, when they claimed that they knew that Petitioner was wrongly convicted undermines their credibility, particularly when there is also no indication that any of these individuals ever went to the police or the prosecutor with this allegedly exculpatory information. *See Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012).  Petitioner is not entitled to habeas relief on his sixteenth and twenty third claims.

## I.  Claims # 22 and 24. The post-conviction infirmity claims.

Petitioner finally claims there were problems with how the judge adjudicated his post-conviction motions. Petitioner is not entitled to habeas relief on his final two claims because they involve an alleged deficiency with his state post-conviction proceedings.  This Court notes that "[t]he Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus

review." *Cress v. Palmer,* 484 F.3d at 853.  Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F.3d at 681.  The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)).  Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

"A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F.3d at 853 (quoting *Kirby*, 794 F. 2d at 247).  Thus, the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F. 2d at 248).  "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotations omitted).  Petitioner is not entitled to relief on his final claims.

## IV.  CONCLUSION

The Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of the claims, the issues are not frivolous; therefore, an appeal

could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal.

*See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **GRANTED**.


Date:  December 18, 2025                    /s/Gershwin A. Drain
                                            Hon. Gershwin A. Drain
                                            U.S. District Judge



CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 22, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager